UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| MARC CHAN, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>ARCSOFT, INC., et al.,<br><br>    Defendants. | Case No. 19-cv-05836-JSW<br><br>**DISCOVERY ORDER**<br>Re: ECF No. 125 |

**INTRODUCTION**

The plaintiffs — former private investors in defendant ArcSoft — sued ArcSoft and its CEO, Michael Deng, for allegedly making misleading statements about the company to induce the plaintiffs to sell their shares at unreasonably low prices in a management buyout.[1] The parties now dispute whether the defendants must produce financial forecasts that existed at the time of the buyout and were furnished to the investors or used (or considered) by Mr. Deng.[2] The defendants must produce the forecasts because they are relevant to the plaintiffs' damages measure.

---

[1] Second Am. Compl. – ECF No. 94. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Joint Disc. Letter – ECF No. 125.

ORDER – No. 19-cv-05836-JSW

**STATEMENT**

The plaintiffs filed the lawsuit in September 2019, after ArcSoft underwent an initial public offering in China and disclosed documents that allegedly contradicted the information the plaintiffs were given prior to the September 2017 buyout.[3] After several motions to dismiss, there are two claims remaining in the case: breach of fiduciary duty by Mr. Deng (claim four in the Second Amended Complaint) and breach of contract by ArcSoft (claim six).[4] The trial court described the breach of fiduciary duty claim as being about whether Mr. Deng failed to recuse himself from the buyout despite having an interest in the transaction.[5] The breach of contract claim is about whether ArcSoft breached Section 2.1 of the Investors Rights Agreement between the plaintiffs and ArcSoft by failing to provide certain financial statements to the plaintiffs.[6]

The present dispute is about the defendants' refusal to respond fully to the plaintiffs' Demand For Production No. 19.[7] That document request sought "[a]ll DOCUMENTS related to any forecasts or projections for 2017, 2018, 2019, or 2020 that existed at the time of the MERGER or the BUYOUT."[8] The defendants contend that only forecasts provided to ArcSoft's board of directors are relevant to the plaintiffs' remaining two claims, and as to forecasts not provided to the board, the plaintiffs are trying to inquire into post-buyout transactions and investors relevant only to the plaintiffs' dismissed claims.[9] The plaintiffs respond that ArcSoft's financial forecasts existing at the time of the buyout — including, in addition to those provided to the board, those provided to the buyers or used by Mr. Deng in his consideration of the buyout — are relevant to

---

[3] Compl. – ECF No. 1.

[4] Order – ECF No. 112 at 24, 27; Second Am. Compl. – ECF No. 94 at 82 (¶¶ 379–84), 85–86 (¶¶ 404–13).

[5] Order – ECF No. 112 at 24.

[6] *Id.* at 2, 27; Invs. Rights Agreement, Ex. 2 to Pao Decl. in Supp. of Mot. to Dismiss – ECF No. 46-1 at 203–04.

[7] Joint Disc. Letter – ECF No. 125.

[8] *Id.* at 2.

[9] *Id.* at 6–9.

(1) the plaintiffs' damages measure, (2) the breach of contract claim, and (3) the breach of fiduciary duty claim.[10]

As to the plaintiffs' damages measure, the parties agree that it will be governed by dissenting shareholders' appraisal remedy in the case of a proposed merger under California corporation law.[11] Thus, the plaintiffs would be entitled to the "fair market value" of their shares "as of the day of, and immediately prior to, the first announcement of the terms of the proposed . . . merger, excluding any appreciation or depreciation in consequence of the proposed . . . merger." Cal. Corp. Code § 1300(a).

The trial court referred all discovery disputes to the undersigned.[12] The court held a hearing on May 26, 2022.

## ANALYSIS

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable. Fed. R. Civ. P. 26(b).

ArcSoft financial forecasts for 2017, 2018, 2019, or 2020 that existed at the time of the buyout (and were furnished to the investors or used or considered by Mr. Deng) are discoverable under the standard set forth in Rule 26 because they are relevant to the plaintiffs' damages measure, *i.e.* the fair market value of the plaintiffs' shares prior to the buyout. *See Gallois v. W. End Chem. Co.*, 185 Cal. App. 2d 765, 772 (1960) (evidence of a company's "prospects would be admissible" to determine the company's shares' fair market value); *Dell, Inc. v. Magnetar Glob. Event Driven Master Fund Ltd*, 177 A.3d 1, 20 (Del. 2017) (in determining the fair market value of a company's shares, "[t]he

---

[10] *Id.* at 2–5.
[11] *Id.* at 4, 6.
[12] Order – ECF No. 126.

corporation must be viewed as an on-going enterprise, occupying a particular market position in the light of future prospects"). Therefore, the defendants must respond in full to the plaintiffs' Demand For Production No. 19.

The court is unpersuaded by the defendants' argument that the forecasts are only relevant if they were provided to the board. Regardless of who saw or used the forecasts, the forecasts concern ArcSoft's future prospects and therefore the fair market value of ArcSoft's shares at the time of the buyout. And as the plaintiffs point out, forecasts provided to the actual buyers involved in the buyout are particularly relevant, because "[t]he commonly accepted definition of 'fair market value' under California law is the price at which the property would change hands between a willing buyer and a willing seller."[13] *Cheng v. Coastal L.B. Assocs., LLC*, 69 Cal. App. 5th 112, 123 (2021).

The defendants also point out that in determining the fair market value of shares for purposes of a dissenting shareholder's appraisal remedy, the results of the proposed merger must be excluded from the analysis.[14] *Gallois*, 185 Cal. App. 2d at 772; *Dell*, 177 A.3d at 20–21; Cal. Corp. Code § 1300(a). Thus, the defendants reason, any forecasts that addressed the results of the buyout are not relevant, and the court should limit the document request to "materials provided to buyers in the [b]uyout and in connection with the [b]uyout."[15] The plaintiffs respond that "any projections in existence at the time of the buyout would necessarily rely heavily upon [ArcSoft]'s historical financial information," thus making the projections relevant, and to the extent the projections factored in the results of the buyout, "that speaks to the documents' weight, not their discoverability."[16] The court agrees with the plaintiffs; even forecasts that touched on the results of the buyout are relevant, independent of the results of the buyout, because of the forecasts' incorporation of historical financials. Thus, the defendants must produce the discovery.

---

[13] Joint Disc. Letter – ECF No. 125 at 2.

[14] *Id.* at 8.

[15] *Id.* at 8–9.

[16] *Id.* at 5.

# CONCLUSION

The defendants must produce documents responsive to the plaintiffs' Demand For Production No. 19 to the extent that the documents were furnished to the investors or used (or considered) by Mr. Deng. This resolves ECF No. 125.

**IT IS SO ORDERED.**

Dated: May 27, 2022

LAUREL BEELER
United States Magistrate Judge